**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| GERDA REMY, ) | |
|     Plaintiff, ) | Case No. 11 C 3564 |
| ) | |
|     v. ) | Judge Joan B. Gottschall |
| ) | |
| THE TRAVELERS HOME AND MARINE ) | |
| INSURANCE COMPANY, ) | |
|     Defendant. ) | |

**MEMORANDUM OPINION AND ORDER**

In May of 2009, Gerda Remy and her sixteen-year-old daughter Francesca, fourteen-year-old daughter Claudia, and thirteen-year-old daughter Gabriella lived together in a home in Elgin, Illinois, covered by homeowner's insurance issued by The Travelers Home and Marine Insurance Company. While Remy was out shopping, the sisters argued and Francesca made the fateful decision to retaliate against Gabriella by pushing a lit piece of paper into a vent connecting Francesca's and Gabriella's bedrooms. The house caught on fire and was extensively damaged. Francesca was charged with aggravated arson in a juvenile proceeding and pleaded guilty to a reduced charge of criminal damage to property. Remy filed a claim with Travelers, which denied coverage based on its belief that Francesca set the fire intentionally. Dissatisfied with this decision, Remy filed suit. Travelers' motion for judgment on the pleadings is before the court. For the following reasons, the motion is denied.

**I. BACKGROUND**

Remy's three-count complaint challenges Travelers' denial of coverage. Count I seeks a declaratory judgment that Travelers wrongfully denied coverage because: (1) Francesca was not an insured under the policy since she was a minor and did not possess an insurable interest in the family home; and (2) did not intend to burn down the home or destroy insured property.

Alternatively, Remy argues that even if Francesca caused an intentional loss, her actions nevertheless fall within the domestic violence exception to the intentional loss exclusion. Count II asserts Travelers' denial of coverage is a breach of contract. Count III alleges Travelers' denial of coverage was vexatious and unreasonable.

Remy's homeowner's policy provided coverage for losses up to $292,000 to her home, $204,400 to personal property, and $87,600 for loss of use of the home. Key provisions of the policy are as follows:[1]

*The Policy's Definition of "Named Insured" and "Insured"*

The named insured in the policy Declarations is "Gerda Remy." Policy, Travelers' Answer and Affirmative Defenses, Dkt. No. 28, Ex. A at 13. The policy defines "you" as "the named 'insured' shown in the Declarations and the spouse if a resident of the same household." *Id*. at 19. It further defines an "insured" as "[y]ou and residents of your household who are: (1) Your relatives; or (2) Other persons under the age of 21 and in the care of any person named above." *Id*. at 20.

*Intentional Loss Exclusion and the Pattern of Criminal Domestic Violence Exception*

The policy also contains an intentional loss provision:

8. Intentional Loss

    a. Intentional Loss means any loss arising out of any act an "insured" commits or conspires to commit with the intent to cause a loss.

---

[1] The amended complaint states that a copy of the homeowner's policy is attached as Exhibit A. Amended Complaint, Dkt. 27 at ¶ 23. The e-filed amended complaint, however, does not include any attachments. It appears that Remy failed to attach the policy to the complaint due to an oversight and Travelers has attached a copy of the policy to its answer. Thus, the policy is properly before the court. *See Tierney v. Vahle*, 304 F.3d 734, 738 (7th Cir. 2002).

              In the event of such loss, no "insured" is entitled to coverage, even "insureds" who did not commit or conspire to commit the act causing the loss.

      b.      However, this exclusion will not apply to deny payment to an innocent co-"insured" who did not cooperate in or contribute to the creation of the loss if:

            (1)      Such loss arose out of a pattern of criminal domestic violence; and

            (2)      The perpetrator of the loss is criminally prosecuted for the act causing the loss.

      c.      If we pay a claim pursuant to Paragraph 8.b., our payment to the "insured" is limited to that "insured's" insurable interest in the property less any payments we first made to a mortgagee or other party with a legal secured interest in the property. In no event will we pay more than the limit of liability.

*Id*. at 52.

<u>*The Cooperation Clause*</u>

Next, the policy contains a cooperation clause:

SECTION I - CONDITIONS

\* \* \*

2.      Duties After Loss. In case of a loss to covered property, we have no duty to provide coverage under this policy if the failure to comply with the following duties is prejudicial to us. These duties must be performed either by you, an "insured" seeking coverage, or a representative of either.

\* \* \*

      e.      Cooperate with us in the investigation of a claim; * * *

      g.      As often as we may reasonably require: * * *

            (2)      Provide us with records and documents we request and permit us to make copies; and

      (3)  Submit to examination under oath, while not in the presence of another "insured", and sign the same;

*Id*. at 32.  Finally, it provides that, "[n]o action can be brought against us unless there has been full compliance with all of the terms under Section I of the policy and the action is started within two years after the date of loss."  *Id*. at 52.

## II. ANALYSIS

**A.**  **Jurisdiction – Amount in Controversy**

  The court must assure itself that subject matter jurisdiction is proper.  *Northeastern Rural Elec. Membership Corp. v. Wabash Valley Power Ass'n*, 707 F.3d 883, 890 (7th Cir. 2013).  Travelers removed this case from state court based on diversity jurisdiction, 28 U.S.C. § 1441(b), which requires complete diversity and an amount in controversy exceeding $75,000, 28 U.S.C. § 1332.  The parties are completely diverse as Remy is an Illinois citizen and Travelers is a Connecticut corporation with its principal place of business in Connecticut.

  The court assesses the amount in controversy as of at the time Travelers removed this case from state court.  *See Carroll v. Stryker Corp.*, 658 F.3d 675, 680-81 (7th Cir. 2011).  Remy seeks $224,530.90 for repairs to her home plus statutory damages under 215 Ill. Comp. Stat. § 5/155 and unspecified damages for loss of personal property and loss of use of the home during repairs.  Travelers paid $187,207.73 to Remy's mortgagee for the loss.  Notice of Removal, Dkt. 1 at 2.  The company that restored the house filed a lien against the house in the amount of $212,950.39.  Amended Complaint, Dkt. 27 at ¶ 21.

  The complaint does not address set-off, and the court makes no findings about this issue now.  Nevertheless, even if Remy may only potentially recover the difference between the cost

-4-

of repairs and the amount paid to her mortgagee ($37,323.17), the $75,000 amount in controversy requirement has been met as she also alleges many of her personal items were destroyed in a significant fire that "spread throughout" her home. *Id*. at ¶ 15. Moreover, Remy alleges that she and her family were forced to stay in a hotel for six months while the home was being repaired. *Id*. at ¶¶ 19-20. In addition, the Illinois Insurance Code allows the court to award statutory damages not to exceed 60% of any recovery by Remy or $60,000. *See* 215 Ill. Comp. Stat. § 5/115(1)(a) & (b); *Stachewicz v. Nat. Union Fire Ins. Co. of Pittsburg*, No. 3:09-CV-470-JPG, 2009 WL 3065065, at *4 (S.D. Ill. Sept. 23, 2009) (statutory damages available under 215 Ill. Comp. Stat. § 5/115 count towards the amount in controversy).

These potential damages are sufficient to support diversity jurisdiction. *See Carroll*, 658 F.3d at 680 (after the removing party suggests the amount in controversy exceeds $75,000 by a preponderance of the evidence, "jurisdiction will be defeated only if it appears to a legal certainty that the stakes of the lawsuit do not exceed $75,000."). Travelers' motion for judgment on the pleadings is thus properly before the court.

**B.     Travelers' Motion for Judgment on the Pleadings**

Travelers seeks judgment on the pleadings, arguing that the intentional loss exclusion bars Remy's claim because: (1) Francesca was an "insured" under Remy's policy; (2) who intended to cause a loss; (3) that did not arise out of a pattern of criminal domestic violence. Alternatively, Travelers asserts that even if the loss was unintentional, Remy did not cooperate during Traveler's investigation of her claim and thus failed to satisfy a condition precedent to recovery under the policy. It also seeks judgment on the pleadings as to Remy's vexatious and unreasonable denial of coverage claim. As discussed below, Francesca is an "insured" under

Remy's policy but based on the current record, the court cannot determine if Francesca intended to cause a loss, if Remy and her family cooperated sufficiently with Travelers as it investigated Remy's claim, or if Travelers acted vexatiously and unreasonably in denying coverage. In addition, if the court later determines that Francesca intentionally caused the loss, the "pattern of criminal domestic violence" exception to the intentional loss exclusion does not apply.

    1.    **Standard of Review**

In evaluating a motion for judgment on the pleadings under Federal Rule of Civil Procedure 12(c), the court employs the "same standard that applies when reviewing a motion to dismiss for failure to state a claim under Rule 12(b)(6)." *Buchanan-Moore v. Cnty. of Milwaukee*, 570 F.3d 824, 827 (7th Cir. 2009). Thus, the court must view the facts alleged in the complaint "in the light most favorable to the nonmoving party and will grant the motion only if it appears beyond doubt that the plaintiff cannot prove any facts that would support her claim for relief." *Id*. (internal citation and quotation omitted). The court should not ignore facts in the complaint that "undermine the plaintiff's claim" nor "give weight to unsupported conclusions of law." *Id*. Moreover, although the complaint need only contain "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), the complaint's factual allegations "must be enough to raise a right to relief above the speculative level." *Pisciotta v. Old Nat'l Bancorp*, 499 F.3d 629, 633 (7th Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) (quotation marks omitted)).

Moreover, the court decides a Rule 12(c) motion for judgment on the pleadings under based upon its review of the pleadings alone. *N. Ind. Gun & Outdoor Shows, Inc. v. City of S. Bend*, 163 F.3d 449, 452 (7th Cir. 1998). The pleadings include the complaint, the answer, and

any documents attached as exhibits, such as affidavits, letters, and contracts. *Id*. at 452–53. As part of its investigation of Remy's claim, Travelers took sworn examinations of Remy and her three daughters. Travelers attached portions of the transcripts of those examinations to its answer, and relies on the excerpted transcripts in its motion for judgment on the pleadings. In her response to Travelers' motion, Remy also relies on the transcripts of the examinations. Unfortunately, however, she has neither limited her discussion to the excerpts filed by Travelers nor provided the complete transcripts.

### 2. The Intentional Loss Exclusion

#### a. Is Francesca an "Insured" Under Remy's Policy?

As noted above, the policy defines "you" as "the named 'insured' shown in the Declarations and the spouse if a resident of the same household." Policy, Travelers' Answer and Affirmative Defenses, Dkt. No. 28, Ex. A at 19. The named insured in the Declarations is Gerda Remy. *Id*. at 13. Under the policy, an "insured" is "[y]ou [Remy] and residents of your household who are . . . [y]our relatives." *Id*. at 20. Remy does not dispute that Francesca is an "insured" person under the policy's plain language. She nevertheless argues that "coverage against the loss at issue in this case did not apply to [Francesca] and she was not an insured for purposes of the application of the intentional loss exclusion" because Francesca did not have an insurable interest in the family home since she was a minor at the time of the loss. Response to Motion for Judgment on the Pleadings, Dkt. 35 at 3.

In support, Remy directs the court's attention to *J.J. Altman & Co. v. Illinois*, 37 Ill.Ct.Cl. 51 (Ill. Ct. Cl. 1984). In that case, the Illinois Court of Claims held that, "[i]t is necessary that the insured profit or gain some advantage by the continued existence of the property, and that if

the property is damaged or destroyed the insured then suffer a loss as a result thereof. Therefore[,] to have an insurable interest the insured must have suffered a loss." *Id*. at 53. Remy appears to be arguing that because she owned the home and suffered the loss, Travelers could not properly deny coverage based on Francesca's actions.

The court begins by considering the policy's plain language as:

In Illinois, insurance policies are contracts; the general rules governing the interpretation and construction of contracts govern the interpretation and construction of insurance policies. Illinois courts aim to ascertain and give effect to the intention of the parties, as expressed in the policy language, so long as doing so does not contravene public policy . . . . If the policy language is unambiguous, courts apply it as written. Policy terms that limit an insurer's liability are liberally construed in favor of coverage, but only when they are ambiguous, or susceptible to more than one reasonable interpretation.

*Phillips v. Prudential Ins. Co. of America*, 714 F.3d 1017, 1020 (7th Cir. 2013). As the policy language compels the conclusion that Francesca is an "insured" under the policy, the fact that she is a minor and cannot personally submit claims under the policy is irrelevant.

Moreover, the *J.J. Altman* case does not support Remy's position. In that case, the court held that while an insurable interest is necessary to recover for a loss, an entity can be a named insured even if it lacks an insurable interest. *J.J. Altman*, 37 Ill.Ct.Cl. at 53. Remy, not Francesca, submitted a claim to Travelers. Under *J.J. Altman*, Francesca's inability to submit a claim under her mother's policy does not affect her status as a named insured under that policy because it is possible to lack an insurable interest and still be an "insured" person. Accordingly, the court finds that Francesca is an "insured" person under the policy.

In addition, Remy's attempt to distance herself from Francesca's actions by emphasizing that Francesca was not the named insured is unavailing. The policy defines "intentional loss" as "any loss arising out of any act *an 'insured'* commits or conspires to commit with the intent to

cause a loss." Policy, Travelers' Answer and Affirmative Defenses, Dkt. No. 28, Ex. A at 52 (emphasis added). Under Illinois law, "exclusions for the intentional or dishonest acts of 'an' or 'any' insured operate to bar coverage for all insureds when one of them commits such an act." *Thoele v. Aetna Cas. & Sur.*, 39 F.3d 724, 727 (7th Cir. 1994) (collecting cases); *see also Brile for Brile v. Estate of Brile*, 296 Ill.App.3d 661, 667 (Ill. App. 1998) ("the use of the phrase 'an insured' in an exclusionary clause unambiguously means 'any insured' . . . . while the use of the term 'the insured' in an exclusionary clause is meant to refer to a definite, specific insured."); *Allstate Ins. Co. v. Smiley*, 276 Ill.App.3d 971, 979-80 (Ill. App. 1995) (insurer properly denied coverage for a loss caused by a husband's negligence where the loss was connected to the wife's home business and the couple's homeowner's policy excluded coverage for injuries arising from the business activities of "an insured" or "any insured"). Thus, the intentional loss exclusion is potentially applicable to the fire because Francesca is an insured person under the policy and for purposes of the exclusion, the fact that Remy is the only named insured is irrelevant.

### b. Did Francesca Intend to Cause a Loss?

The court next considers whether the intentional loss exclusion precludes recovery because the fire arose "out of any act an 'insured' commits or conspires to commit with the intent to cause a loss." Policy, Travelers' Answer and Affirmative Defenses, Dkt. No. 28, Ex. A at 52. Remy alleges that as part of a "day long" fight with her sister, Francesca intentionally lit a piece of paper on fire and placed it inside a vent to "scare" Gabriella, the burning paper fell from the vent into Gabriella's room and set Gabriella's bed on fire, and the fire then spread through the home. Amended Complaint, Dkt. 27 at ¶¶ 7, 10, 13. Remy also alleges Francesca did not

intend to set items in the house on fire (other than the piece of paper), burn the house down, or cause a loss. *Id*. at ¶¶ 11-12.

Travelers, on the other hand, notes that during Remy's examination under oath, she testified that the day before the fire, Francesca damaged some of Gabriella's possessions and defaced a dresser and mirror with spray paint. In addition, during Francesca's examination under oath, she testified that when she put the lit fire into the vent, she thought Gabriella was downstairs.

The court is not required to accept the allegations in the amended complaint about Francesca's intent and, instead, must draw its own conclusions. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions."). Under Illinois law, when construing policy exclusions for damage that is expected or intended by the insured, the court must determine if the insured should have "reasonably anticipated" the resulting injuries. *American Family Mut. Ins. Co. v. Guzik*, 406 Ill.App.3d 245, 248 (Ill. App. Ct. 2010). If the insured was "consciously aware that the injuries were practically certain to be caused by [her] conduct, the injuries are considered 'expected' from the standpoint of the insured and are excluded from coverage." *Id*.

The parties vigorously champion opposing views regarding Francesca's intent based on the statements given to Travelers. Travelers stresses that Francesca placed the lit paper in the vent when she knew Gabriella was not in her bedroom and had recently spray painted some of Gabriella's bedroom furniture. It thus reasons that Francesca intended to damage more of Gabriella's property by setting a fire because it is impossible to scare someone who is not there. In response, Remy summarizes portions of Francesca's examination under oath that are not

-10-

before the court and, among other things, asserts that Francesca testified she expected Gabriella to return to her room right away and intended Gabriella to see the lit paper, become frightened, remove it from the vent, and blow it out. The court must assess Francesca's credibility to determine if she intended to scare Gabriella. It cannot do so based on the materials provided by the parties.

Travelers alternatively contends that Francesca's plea to a charge of criminal damage to property means she admits she set the fire intentionally. The court cannot evaluate whether Francesca's plea affects this case as the record does not contain details about the state court juvenile proceedings. Thus, at this time, the court cannot find that Francesca intended to cause a loss when she placed the flaming paper into the vent.

        c.      **The "Pattern of Criminal Domestic Violence" Exception to the Intentional Loss Exclusion**

In the interest of completeness, the court will address whether the "pattern of criminal domestic violence" exception to the intentional loss exclusion applies. Under the policy, the intentional loss exclusion does not apply to an innocent co-insured, such as Remy, if the "loss arose out of a pattern of criminal domestic violence" and "[t]he perpetrator of the loss is criminally prosecuted for the act causing the loss." Policy, Travelers' Answer and Affirmative Defenses, Dkt. No. 28, Ex. A at 52. The policy does not define "pattern of criminal domestic violence."

The parties proffer competing interpretations and in support, again parse out various aspects of the statements given to Travelers. Travelers contends that the complaint includes allegations about a single criminal act (the setting of the fire) and that a single incident is not a "pattern." The court agrees with this common-sense interpretation of the word "pattern." *See*

-11-

*Zubi v. Acceptance Indem. Ins. Co.*, 323 Ill.App.3d 28, 78 (Ill. App. Ct. 2001) (the court is bound by the policy's plain language). Perhaps recognizing this problem, Remy offers a broad interpretation of the allegations in the complaint by asserting that harassment is a form of "criminal domestic violence" and contending the fire occurred due to a pattern of harassment among the sisters. In support, she asserts that on the day of the fire, the sisters were "arguing back and forth, messing up each other's rooms, and engaging in other acts to upset one another." Amended Complaint, Dkt. 27 at ¶ 7. In her examination under oath, however, she conceded Francesca never damaged Gabriella's property prior to the fight at issue in this case and had never engaged in any violent physical incidents with her sister other than mild sibling shoving.

The parties agree that criminal acts necessarily must violate a criminal statute. Because the policy specifies "criminal domestic violence," the court will consider whether Francesca's actions are within the ambit of the Illinois Domestic Violence Act. The Illinois Domestic Violence Act defines "domestic violence" as "physical abuse, harassment, intimidation of a dependent, [or] interference with personal liberty or willful deprivation but does not include reasonable direction of a minor child by a parent or person in loco parentis. 750 Ill. Comp. Stat. §§ 60/103(1), (3).

It defines "harassment" as:

knowing conduct which is not necessary to accomplish a purpose that is reasonable under the circumstances; would cause a reasonable person emotional distress; and does cause emotional distress to the petitioner. Unless the presumption is rebutted by a preponderance of the evidence, the following types of conduct shall be presumed to cause emotional distress:

(i)     creating a disturbance at petitioner's place of employment or school;

(ii)     repeatedly telephoning petitioner's place of employment, home or residence;

    (iii)    repeatedly following petitioner about in a public place or places;

    (iv)    repeatedly keeping petitioner under surveillance by remaining present outside his or her home, school, place of employment, vehicle or other place occupied by petitioner or by peering in petitioner's windows;

    (v)    improperly concealing a minor child from petitioner, repeatedly threatening to improperly remove a minor child of petitioner's from the jurisdiction or from the physical care of petitioner, repeatedly threatening to conceal a minor child from petitioner, or making a single such threat following an actual or attempted improper removal or concealment, unless respondent was fleeing an incident or pattern of domestic violence; or

    (vi)    threatening physical force, confinement or restraint on one or more occasions.

750 Ill. Comp. Stat. § 60/103(7).

Although property damage is not included in the list of conduct presumed to cause emotional distress, it is possible for property damage to rise to the level of harassment under the Act. *Henderson v. Henderson*, No. 3-10-0668, 2011 WL 10468193, at *4-5 (Ill. App. Ct. May 19, 2011) (rejecting mother's Domestic Violence Act claim because she failed to identify evidence showing that her ex-husband damaged her daughter's cell phone and thus could not prove the ex-husband tried to harass or intimidate the daughter). Nevertheless, "considerations of constitutionality and statutory interpretation require that emotional distress, anxiety, and discomfort necessarily have to refer to emotional disturbances more serious than the "mildest states" of these terms suggest. *People v. Cardamone*, 379 Ill.App.3d 656, 634 (Ill. App. Ct. 2008) (quoting *People v. Taylor*, 349 Ill.App.3d 839, 842 (Ill. App. Ct. 2004)). Thus, liability under the Act requires a harasser to intend to produce a "level of emotional distress or discomfort . . . substantially greater than mere annoyance." *People v. Taylor*, 349 Ill.App.3d at 843-44 (interpreting the Domestic Violence Act's definition of "harassment").

The court finds that a single instance of fighting is not a "pattern." Moreover, teenagers' disagreements, efforts to "mess[] up each other's rooms" and attempts to upset each other, while undesirable, do not rise to the level of criminal harassment. Amended Complaint, Dkt. 27 at ¶ 7. Accepting Francesca's testimony as true, as the court must when considering a motion for judgment on the pleadings, adding the lit paper incident to the mix does not alter this conclusion as Francesca claims she merely intended to scare Gabriella with the lit paper but then have Gabriella quickly extinguish it with no harm done. Thus, at best, Francesca's decision to spray paint her sister's belongings might rise to the level of criminal property damage. However, given that Remy testified Francesca had never previously damaged her sisters' property, the sisters' quarreling, while unfortunate, is not a "pattern of criminal domestic violence."

The court, therefore, finds that the "criminal domestic violence" exception to the intentional loss exclusion is inapplicable. As noted above, although Francesca is an "insured" under Remy's policy, the court cannot determine if the intentional loss exclusion bars Remy's claim as the issue of whether Francesca intended to cause a loss remains open. Travelers' motion for judgment on the pleadings based on the intentional loss exclusion is, therefore, denied.

### 3. The Duty to Cooperate

Alternatively, Travelers argues that even if the policy covers losses from the fire, Remy failed to cooperate during Traveler's investigation of her claim and thus did not satisfy a condition precedent to recovery under the policy. The policy contains a clause requiring Remy and anyone else who is an "insured" person under the policy to cooperate with Travelers in its investigation of a claim made under the policy by, among other things, producing documents and

submitting to an examination under oath. Policy, Travelers' Answer and Affirmative Defenses, Dkt. No. 28, Ex. A at 32. It also conditions the filing of a suit against Travelers on "full compliance" with the policy's terms. *Id*. at 52.

Generally, whether an insured has breached a cooperation clause in an insurance policy is a question of fact. *Piser v. State Farm Mut. Auto. Ins. Co.*, 405 Ill.App.3d 341, 347 (Ill. App. Ct. 2010). In the amended complaint, Remy alleges she submitted to a sworn examination and allowed Travelers to take sworn examinations of her three daughters. Amended Complaint, Dkt. 27 at ¶ 31. In contrast, Travelers asserts that Remy improperly claimed privilege and did not provide sufficient information about the juvenile criminal proceedings. The court cannot resolve this issue based on the limited record before it. Travelers' motion for judgment on the pleadings based on the cooperation clause is, therefore, denied.

    **4.**     **Remy's Vexatious and Unreasonable Delay Claim**

In Count III of her amended complaint, Remy asserts that Travelers vexatiously and unreasonably denied coverage as it should have known that losses associated with the fire were covered. Travelers' fourth affirmative defense contains the mirror image argument that its denial of coverage was neither vexatious nor unreasonable. The Illinois Insurance Code allows the court to award attorneys' fees and statutory damages when an insurer vexatiously and unreasonably delays in settling or paying a claim. *West Bend Mut. Ins. v. Norton*, 406 Ill.App.3d 741, 744-45 (Ill. App. Ct. 2010) (citing 215 Ill. Comp. Stat. § 5/155). When determining if an insurer acted vexatiously and unreasonably, the court must exercise its discretion and consider the totality of the circumstances. *LeDonne v. AXA Equitable Life Ins. Co.*, No. 05 C 1151, 2009 WL 3721038, at *7 (N.D. Ill. Nov. 2, 2009).

Travelers contends that even if the court concludes that Remy may be able to prove facts that would support a claim under the policy, "she can never prove that Travelers' refusal to pay her claim is vexatious or unreasonable" because "Travelers has practically begged for any information that supports Remy's contentions." Memorandum in Support of Travelers' Motion for Judgment on the Pleadings, Dkt. 33 at 14. The court will be better able to assess Remy's claim that Travelers' vexatiously and unreasonably denied coverage based on a complete record. Thus, Travelers' motion for judgment on the pleadings as to Remy's vexatious and unreasonable delay claim is denied.

### III. CONCLUSION

For the above reasons, Travelers' motion for judgment on the pleadings is denied.

ENTER:

/s/
JOAN B. GOTTSCHALL
United States District Judge

DATED: June 11, 2013